UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

UNITED STATES OF AMERICA

v.                                     CRIMINAL ACTION NO. 5:22-cr-00029

KYLE L. THOMAS

### MEMORANDUM OPINION AND ORDER

Pending are Defendant Kyle Thomas's remaining objections to the Presentence Investigation Report ("Report" or "PSR").

On May 19, 2022, Mr. Thomas pled guilty to distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1). [Doc. 39]. During sentencing on October 20, 2022, the Court directed the parties to brief the issues discussed herein. The matter is ready for adjudication.

For the following reasons, the Court **OVERRULES** Mr. Thomas's objection concerning possession of a dangerous weapon. A two-level enhancement under U.S.S.G. § 2D1.1(b)(1) is appropriate. The Court additionally declines to vary downward based on the presence of a less-potent fentanyl analogue.

I.

Section 2D1.1(b)(1) of the *United States Sentencing Guidelines* provides that, when a defendant is sentenced for a drug offense, his base offense level should be increased two levels "[i]f a dangerous weapon (including a firearm) was possessed." According to the guideline commentary, this enhancement "reflects the increased danger of violence when drug traffickers

possess weapons," and "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. §2D1.1(b)(1) cmt. n.11(A). For the enhancement to apply, the United States "must prove by a preponderance of the evidence that 'the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction.'" *United States v. Manigan*, 592 F.3d 621, 628–29 (4th Cir. 2010) (quoting *United States v. McAllister*, 272 F.3d 228, 233–34 (4th Cir. 2001)). To satisfy its burden, the United States "need not prove 'precisely concurrent' drug trafficking and weapon possession." *United States v. Bolton*, 858 F.3d 905, 912 (4th Cir. 2017). "Rather, the [G]overnment need prove only that the weapon was 'present,' which it may do by establishing 'a temporal and spatial relation linking the weapon, the drug trafficking activity, and the defendant.'" *United States v. Mondragon*, 860 F.3d 227, 231 (4th Cir. 2017) (quoting *Bolton*, 858 F.3d at 912). "[P]roof of constructive possession of the dangerous weapon is sufficient, and the Government is entitled to rely on circumstantial evidence to carry its burden." *Manigan*, 592 F.3d at 629. If the United States satisfies its initial burden, "the defendant may avoid the enhancement by showing the weapon's link to his or her drug activities was 'clearly improbable.'" *Bolton*, 858 F.3d at 912. The defendant may do so "by presenting circumstantial evidence, such as the type of weapon involved and its location and accessibility." *Id.*; *Manigan*, 592 F.3d at 629.

Mr. Thomas objects to the dangerous weapon enhancement for two reasons. First, he contends the United States "has no facts which show that the perceived handgun was owned by Mr. Thomas or was ever in his actual or constructive possession." [Doc. 56 at 9]. Second, Mr. Thomas contends the analysis in *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022), forbids resort to the "clearly improbable" standard of proof in Application Note 11(A) to Section 2D1.1. [Doc. 56 at 10].

2

Respecting the first contention, the United States asserts there was a temporal and spatial relation linking the weapon, the drug trafficking activity, and the defendant. [Doc. 58 at 5]. It notes the video recording of the October 18, 2021, transaction "clearly shows a handgun on the floor of a room in the house while the CI was waiting on drugs." [*Id.*]. The United States emphasizes that the handgun was "mere steps away" from the room where the transaction took place. [*Id.*]. While the United States concedes that the handgun was observed in Kristopher Thomas's room and not in the Defendant's room, it maintains the handgun was "readily available" for Mr. Thomas to use "to protect himself or the drugs and cash involved in his drug business." [*Id.* at 5–6]; *see also United States v. Manigan*, 592 F.3d 621, 629 (4th Cir. 2010) ("[S]o long as a firearm's location makes it readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business, there will be sufficient evidence to connect the weapon [] to the offense conduct.").

Mr. Thomas acknowledges the accuracy of the United States' factual assertions. He emphasizes, however, the handgun could have belonged to any of the three other, uncharged men present in the mobile home. [Doc. 56 at 9]. He also notes, *inter alia*, (1) law enforcement never seized the handgun, and (2) the CI "relayed no report to law enforcement that Mr. Thomas had ever talked about owning a firearm or having access to a firearm in the mobile home." [Doc. 56 at 2, 9].

The relative location of the firearm aids Mr. Thomas, but it is not dispositive. It is instead the case that the presence of the firearm inside the mobile home during the controlled transaction is sufficient to link the firearm temporally and spatially to Mr. Thomas and his drug trafficking activity. The United States has proven Mr. Thomas possessed the firearm in connection with the offense of conviction. The Court **OVERRULES** Mr. Thomas's objection.

Respecting the *Campbell* contention, the United States is correct. Application Note 11(A) is not inconsistent with the text of Section 2D1.1(b)(1). As noted by our Court of Appeals, "[t]he commentary . . . makes clear . . . that the weapon must be *connected with the offense*." *Mondragon*, 860 F.3d at 231 (emphasis in original). Indeed, the commentary imposes a burden on the United States to prove by a preponderance of the evidence that (1) the weapon was present, and (2) the weapon was connected to the offense of conviction. The commentary's "clearly improbable" standard allows the defendant to overcome the guideline's presumption that mere presence of a dangerous weapon qualifies as possession for sentencing purposes. Without the commentary's clarification, the guideline text would apply the enhancement any time a weapon is present, regardless of its connection to the offense conduct. Application Note 11(A) is thus a consistent clarification of Section 2D1.1(b). It does not offend *Campbell*. It is further the case that Mr. Thomas has not overcome the presumption.

## II.

*United States Sentencing Guidelines* Section 2D1.1(c) provides the base offense levels for various quantities of specific controlled substances. Note (A) to the Drug Quantity Table provides that "[i]f a mixture or substance contains more than one controlled substance, the weight of the entire mixture or substance is assigned to the controlled substance that results in the greater offense level." U.S.S.G. § 2D1.1(c), *Notes to Drug Quantity Table*.

The controlled substances here were obtained from two of the three controlled purchases and contained both fentanyl and a fentanyl fluorinated analogue. The Drug Conversion Tables found in Application Note 8(D) to Section 2D1.1 provide 1 gram of a fentanyl analogue is equivalent to 10 kilograms of converted drug weight and 1 gram of fentanyl is equivalent to 2.5 kilograms of converted drug weight. U.S.S.G. § 2D1.1, cmt. n.8(D). Because a fentanyl analogue

4

results in a greater offense level, the Probation Officer assigned the total weight of each of the two drug mixtures to the fentanyl analogue to calculate Mr. Thomas's base offense level.

Synthetic opioids like fentanyl have wreaked havoc in recent years. The effects of fentanyl have been acutely felt in this District. It is true that Mr. Thomas was unaware the drug he sold contained fentanyl, much less a fentanyl analogue. [*See id.* at 10]. That *para*-fluorofentanyl may be less potent than fentanyl does not negate its dangerousness. Indeed, Mr. Thomas's conduct was made perhaps more dangerous by his unknowing -- and hazardous -- dealing in such substances. The Court agrees with the United States Sentencing Commission's policy decision to apply a 10:1 kilogram conversion ratio to all fentanyl analogues; the Commission was likewise correct to assign the weight of the entire mixture to the controlled substance in the mixture that results in the greater offense level. Accordingly, the Court concludes a downward variance on this basis is inappropriate.

The Clerk is **DIRECTED** to send a copy of this written opinion and order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: March 23, 2023

Frank W. Volk
United States District Judge